**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN DOE, One; JOHN DOE, Two;
JOHN DOE, Three; JOHN DOE, Four;
on behalf of themselves and all
others similarly situated; JOHN DOE,
Five,

       *Plaintiffs-Appellants*,

v.

CVS PHARMACY, INC.; CAREMARK,
LLC; CAREMARK CALIFORNIA
SPECIALTY PHARMACY, LLC;
NATIONAL RAILROAD PASSENGER
CORPORATION, DBA Amtrak;
LOWE'S COMPANIES, INC.; TIME
WARNER, INC.,

       *Defendants-Appellees*,

and

CAREMARK RX, LLC; CVS HEALTH
CORPORATION,

       *Defendants*.

No. 19-15074

D.C. No.
3:18-cv-01031-
EMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submission Deferred June 12, 2020
Submitted December 1, 2020
San Francisco, California

Filed December 9, 2020

Before:  MILAN D. SMITH, JR. and ANDREW D.
HURWITZ, Circuit Judges, and TIMOTHY M.
BURGESS,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY**

### Affordable Care Act

The panel affirmed in part and vacated in part the district court's order dismissing an action brought under the Affordable Care Act and other statutes by individuals living with HIV/AIDS whose pharmacy benefits manager for their employer-sponsored health plans required them to obtain specialty medications through its designated specialty pharmacy for those benefits to be considered "in-network."

The panel held that Section 1557 of the ACA incorporates the anti-discrimination provisions of various civil rights statutes, and prohibits discrimination on the basis

---

* The Honorable Timothy M. Burgess, Chief United States District Judge for the District of Alaska, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

of race, color, or national origin pursuant to Title VI of the Civil Rights Act of 1964, on the basis of sex pursuant to Title IX of the Education Amendments Act of 1972, on the basis of age pursuant to the Americans with Disabilities Act, and on the basis of disability pursuant to Section 504 of the Rehabilitation Act. Agreeing with the Sixth Circuit, the panel held that Section 1557 did not create a healthcare-specific anti-discrimination standard that would permit a discrimination claim under any of the enforcement mechanisms of the ACA regardless of plaintiffs' protected class. Accordingly, because plaintiffs claimed discrimination on the basis of their disability, to state a claim for a Section 1557 violation, they were required to allege facts adequate to state a claim under Section 504 of the Rehabilitation Act.

Vacating in part and remanding for further proceedings, the panel held that plaintiffs stated a claim for disability discrimination under the ACA. Applying the Section 504 framework, the panel concluded that plaintiffs adequately alleged that they were denied meaningful access to their prescription drug benefit under their employer-sponsored health plans because defendants' program prevented them from receiving effective treatment for HIV/AIDS.

The panel affirmed the district court's dismissal of plaintiffs' claim of disability discrimination pursuant to the Americans with Disabilities Act on the ground that a benefit plan is not a place of "public accommodation." The panel also affirmed the district court's denial of plaintiffs' claim for benefits pursuant to ERISA and their cause of action under California's Unfair Competition Law, except to the extent it was predicated on a violation of the ACA.

## COUNSEL

Jerry Flanagan (argued), Benjamin Powell, and Daniel L. Sternberg, Consumer Watchdog, Los Angeles, California; Alan M. Mansfield, Whatley Kallas LLP, San Diego, California; Henry C. Quillen, Whatley Kallas LLP, Portsmouth, New Hampshire; Edith M. Kallas, Whatley Kallas LLP, New York, New York; for Plaintiffs-Appellants.

Craig D. Singer (argued), Enu Mainigi, Grant A. Geyerman, and Sarah Lochner O'Connor, Williams & Connolly LLP, Washington, D.C.; Tami S. Mason, Foley & Lardner LLP, Los Angeles, California; for Defendants-Appellees CVS Pharmacy, Inc.; Caremark, LLC; and Caremark California Specialty Pharmacy, LLC.

Phillip J. Eskenazi, Kirk A. Hornbeck, and Christopher M. Butler, Hunton Andrews Kurth LLP, Los Angeles, California, for Defendant-Appellee Lowe's Companies, Inc.

Michael Bernstein, Robinson & Cole LLP, New York, New York; Jean E. Tomasco, Robinson & Cole LLP, Hartford, Connecticut; for Defendant-Appellee Time Warner, Inc.

Brian W. Shaffer, Morgan Lewis Bockius LLP, Philadelphia, Pennsylvania; Elise M. Attridge and Seane McMahan, Morgan Lewis Bockius LLP, Washington, D.C.; for Defendant-Appellee National Railroad Passenger Corporation.

Jeffrey Blend, Tom Myers, and Arti Bhimani, AIDS Healthcare Foundation, Los Angeles, California, as and for Amicus Curiae.

Carly A. Myers, Silvia Yee, and Arlene B. Mayerson, Disability Rights Education & Defense Fund, Berkeley, California, for Amici Curiae Disability Rights Education and Defense Fund, Disability Rights Advocates, Disability Rights California, Disability Rights Legal Center, National Health Law Program, and American Civil Liberties Union.

**OPINION**

M. SMITH, Circuit Judge:

Does I–V (Does) are individuals living with HIV/AIDS who have employer-sponsored health plans, and who rely on those plans to obtain prescription drugs. Until recently, Does could fill their prescriptions at community pharmacies, where they were able to consult knowledgeable pharmacists who were familiar with their personal medical histories and could make adjustments to their drug regimens to avoid dangerous drug interactions or remedy potential side effects. Does allege these services, among others, are critical to HIV/AIDS patients, who must maintain a consistent medication regimen to manage their chronic disease.

Now, Does' pharmacy benefits manager, CVS Caremark, requires all health plan enrollees to obtain specialty medications, including HIV/AIDS drugs, through its designated specialty pharmacy for those benefits to be considered "in-network." The in-network specialty pharmacy dispenses specialty drugs only by mail or drop shipments to CVS pharmacy stores for pickup. Does allege this program violates the anti-discrimination provisions of the Affordable Care Act (ACA), the Americans with Disabilities Act (ADA), and the California Unruh Civil Rights Act (Unruh Act); denies them benefits to which they

are entitled under the Employee Retirement Security Act (ERISA); and violates California's Unfair Competition Law (UCL). The district court granted Defendants' motion to dismiss. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellants Does are individuals living with HIV/AIDS who rely on employer-sponsored health plans for their medications. Defendant-Appellees CVS Pharmacy, Inc., a retail pharmacy company, CVS Caremark, LLC, a pharmacy benefits manager, and Caremark California Specialty Pharmacy LLC, a specialty pharmacy (together, CVS), are affiliates of non-party CVS Health Corporation. Defendant-Appellees Lowe's Companies, Inc., Time Warner, Inc., and National Passenger Co. (d/b/a Amtrak) (together, Employer Defendants) provide prescription benefits to Does through employer-based health plans.

Does allege that their prescription benefit plans allow them to obtain specialty medications, such as their HIV/AIDs prescriptions, at "in-network" prices only through Caremark California Specialty Pharmacy (CSP), which delivers medications to clients by mail or to a CVS pharmacy for pickup (the Program). If Does do not obtain their HIV/AIDS medications through CSP, those medications are not considered "in-network" benefits covered by the health plans, which results in higher prices amounting to thousands more dollars per month. Before CVS enrolled Does in the Program, Does could obtain HIV/AIDS medications from any in-network pharmacy, including from non-CVS pharmacies (Network Pharmacies), and receive their full insurance benefits.

Does allege that enrollment in the Program forces them to forego essential counseling and consultation from specialty pharmacists, who are

> best positioned to: (i) detect potentially life-threatening adverse drug interactions and dangerous side effects, some of which may only be detected visually; (ii) immediately provide new drug regimens as their disease progresses; and (iii) provide essential advice and counseling that help HIV/AIDS patients and families navigate the challenges of living with a chronic and sometimes debilitating condition.

The Program also forces those who are prescribed non-specialty medications to fill certain prescriptions at community pharmacies and other specialty drugs through the Program. Does allege "[t]his 'separate and unequal' splitting of prescription providers also makes it difficult, if not impossible, for CVS Caremark to track potentially life-threatening drug interactions."

According to Does, filling their prescriptions through the Program causes them substantial difficulties and puts their privacy at risk. They allege they must be present at the time of delivery to avoid missing deliveries, having medications stolen, or having medications damaged by being left out in the elements. They also report making multiple trips to CVS pharmacies—sometimes at great distances from their homes—to correct prescriptions that were filled incorrectly, and risking their privacy when CVS pharmacy staff shout their names and medications in front of other customers. Deliveries to the home or the workplace risk notifying neighbors or coworkers that Does have HIV/AIDS.

Several Does have requested to opt out of the Program. Those requests were denied.

Does allege the "Program constitutes a material and discriminatory change in Class Members' coverage, a significant reduction in or elimination of prescription drug benefits, and a violation of the standards of good health care and clinically appropriate care for HIV/AIDS patients." Does assert the following claims against CVS and the Employer Defendants: (1) violation of the anti-discrimination provisions of the ACA, 42 U.S.C. § 18116; (2) violations of the ADA, 42 U.S.C. § 12182; (3) state law violations of the UCL and the Unruh Act; and (4) claims under ERISA for benefits due under the plan, 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty, 29 U.S.C. § 1132(a)(3), and failure to provide full and fair review, 29 U.S.C. § 1132(a)(3).

Following briefing and oral argument, the district court dismissed Does' complaint with prejudice.  This appeal followed.

## STANDARDS OF REVIEW

"We review de novo a district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019).  In doing so, "[w]e accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Id.* (internal quotation marks omitted).  "We also review de novo a district court's interpretation and construction of a federal statute."  *Holmes v. Merck & Co.*, 697 F.3d 1080, 1082 (9th Cir. 2012).

## ANALYSIS

### A

Section 1557 of the ACA incorporates the anti-discrimination provisions of various civil rights statutes, and prohibits discrimination on the basis of race, color, or national origin pursuant to Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*), on the basis of sex pursuant to Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), on the basis of age pursuant to the ADA (42 U.S.C. § 6101 *et seq.*), and on the basis of disability pursuant to Section 504 of the Rehabilitation Act (29 U.S.C. § 794). 42 U.S.C. § 18116. Does argue that Section 1557 creates a new healthcare-specific anti-discrimination standard that permits a discrimination claim under any of the enforcement mechanisms of the statute regardless of Does' protected class status. Accordingly, Does maintain that they state a Section 1557 claim for disability discrimination on a disparate impact theory, regardless of whether Section 504 of the Rehabilitation Act would permit a disparate impact claim. In *Schmitt v. Kaiser Foundation Health Plan of Washington*, we left open the question of whether the ACA created a healthcare-specific anti-discrimination standard that allowed plaintiffs to choose standards from a menu provided by other anti-discrimination statutes. 965 F.3d 945, 954 (9th Cir. 2020). We answer now in the negative.

The Sixth Circuit rejected an identical argument in *Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235 (6th Cir. 2019). The court concluded that the statutory text of Section 1557—which prohibits discrimination "on the ground prohibited under" Title VI, Title IX, the Age Discrimination Act, or the Rehabilitation Act—did not lend itself to an interpretation that would permit a plaintiff to

"pick the statute with the lightest standard from this menu of four options and use that standard of liability in prosecuting his claim for disability discrimination." *Id.* at 238. Rather, the court interpreted the word "ground" to refer to

> the forbidden source of discrimination: race, color, and national origin (Title VI); sex (Title IX); age (Age Discrimination Act); and disability (Rehabilitation Act). When "ground" is paired with "prohibited," as in "on the ground prohibited," the statute picks up the type of discrimination—the standard for determining discrimination—prohibited under each of the four incorporated statutes. If the claimant seeks relief for discrimination "on the ground prohibited" by § 504 of the Rehabilitation Act, for example, he must show differential treatment "solely by reason of" disability, 29 U.S.C. § 794(a), not some other standard of care.

*Id.* The court reasoned that, while the ACA prohibits discrimination based on several different grounds, "[b]y referring to four statutes, Congress incorporated the legal standards that define discrimination under each one." *Id.* at 239.

The second sentence of Section 1557 supports that interpretation. It states that "[t]he enforcement mechanisms provided for and available under such title VI, title IX, [S]ection 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a). The Sixth Circuit interpreted the phrase "enforcement mechanism" to "cover[] the distinct methods available under the four listed statutes for compelling

compliance with the substantive requirements of each statute," noting that "[i]f the first sentence created a brand-new single standard for what qualifies as discrimination, why would Congress use four distinct families of enforcement mechanisms to compel compliance with that standard rather than creating a matching single mechanism?" *BlueCross BlueShield*, 926 F.3d at 239. The Sixth Circuit thus concluded that Section 1557 "prohibits discrimination against the disabled in the provision of federally supported health programs under § 504 of the Rehabilitation Act. In doing so, the ACA picks up the standard of care for showing a violation of *§ 504*, not the other laws incorporated by the statute." *Id.*

We find *BlueCross BlueShield* persuasive and hold that Section 1557 does not create a new healthcare-specific anti-discrimination standard. Because Does claim discrimination on the basis of their disability, to state a claim for a Section 1557 violation, they must allege facts adequate to state a claim under Section 504 of the Rehabilitation Act.

**B**

Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794.

In *Alexander v. Choate*, 469 U.S. 287 (1985), the Supreme Court concluded that not all disparate-impact showings qualify as prima-facie cases under Section 504. *Id.* at 299. *Choate* involved a challenge by Medicaid recipients to a proposed reduction in the number of inpatient hospital days covered by Tennessee's Medicaid program from 20 to

14. *Id.* at 289. The plaintiffs argued the reduction would disproportionately affect people with disabilities, who typically required more in-patient care, and thus discriminated against people with disabilities in violation of Section 504. *Id*. at 290. Rather than try to classify particular instances of discrimination as intentional or disparate-impact, the Court focused on whether disabled persons had been denied "meaningful access" to state-provided services. *Id.* at 302. In discussing whether disabled individuals had meaningful access to plan benefits under the 14-day in-patient limitation, the Court did not limit its consideration to whether the policy applied on the same terms to people with disabilities as it did to those without. It also considered whether the in-patient limitation would have the effect of systematically excluding people with disabilities. *Id.* After considering Section 504's regulations, the federal Medicaid Act, and HHS guidelines, the Court ultimately concluded that "[b]ecause the handicapped have meaningful and equal access to that benefit, Tennessee is not obligated to . . . provide the handicapped with more than 14 days of inpatient coverage." *Id.* at 306. We assess Section 504 claims under the standard articulated in *Choate*. *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008).

## 1.

Under the test outlined in *Choate*, we first consider the nature of the benefit Does were allegedly denied. The district court defined the benefit as an entitlement "to obtain HIV/AIDS medication for favorable prices at non-CVS pharmacies," but Does argue the denied benefit is meaningful access to "the prescription drug benefit as a whole[.]" Construing the allegations in the light most favorable to Does, we agree with Does' articulation of the benefit. The crux of Does' complaint is that the Program

discriminates against them by eliminating various aspects of pharmaceutical care that they deem critical to their health. Moreover, looking to the benefit's statutory source, as the Supreme Court did in *Choate*, 469 U.S. at 303, the ACA requires that health plans cover prescription drugs as an "essential health benefit." 42 U.S.C. § 18022(b)(1)(F). The district court's definition unduly narrowed the benefit to obtaining specialty drugs at favorable prices from certain pharmacies, when Does' characterization of the benefit tracks the ACA, asserting more than just cost-related differences.

**2.**

Second, we analyze whether the plan provided meaningful access to the benefit. The district court erroneously evaluated the benefits under the ACA at issue here against the guarantees, or lack thereof, of the Medicaid Act.

In *Choate*, the Supreme Court relied on the Medicaid Act to determine the scope of the concerned Medicaid benefit, observing that "[t]he Act gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" *Id.* at 303 (quoting 42 U.S.C. § 1396a(a)(19)). The Court concluded that disabled Medicaid recipients had not been denied meaningful access to a benefit to which they were entitled, *id.* at 306, because the Medicaid Act did not guarantee Medicaid recipients "adequate health care," or the "level of health care precisely tailored to his or her particular needs," *id* at 303.

Consistent with *Choate*, the district court in this case should have looked to the ACA to determine whether Does

adequately alleged they were denied meaningful access to an ACA-provided benefit. Indeed, Does have adequately alleged that they were denied meaningful access to their prescription drug benefit, including medically appropriate dispensing of their medications and access to necessary counseling. Due to the structure of the Program as it relates to HIV/AIDS drugs, Does claim, they cannot receive effective treatment under the Program because of their disability.

Courts also look to the regulations promulgated pursuant to the statute at issue to inform the meaningful access inquiry. *See Choate*, 469 U.S. at 304–06; *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013). The ACA regulations require that "any restriction on a benefit or benefits must apply uniformly to all similarly situated individuals," and must "not be directed at individual participants or beneficiaries based on [disability]." 45 C.F.R. § 146.121(b)(1)(i)(B). Moreover, the regulations state, "An issuer does not provide [essential health benefits] if its benefit design, or *the implementation of its benefits design*, discriminates based on an individual's . . . disability[.]" *Id.* § 156.125(a) (emphasis added). Does allege the structure and implementation of the Program discriminates against them on the basis of their disability by preventing HIV/AIDS patients from obtaining the same quality of pharmaceutical care that non-HIV/AIDS patients may obtain in filling non-specialty prescriptions, thereby denying them meaningful access to their prescription drug benefit. Those allegations are sufficient to state an ACA disability discrimination claim.

The fact that the benefit is facially neutral does not dispose of a disparate impact claim based on lack of meaningful access. Following *Choate*, we recognized that

the unique impact of a facially-neutral policy on people with disabilities may give rise to a disparate impact claim where state "services, programs, and activities remain open and easily accessible to others." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996); *see also K.M.*, 725 F.3d at 1102 ("We have relied on *Choate*'s construction of Section 504 in ADA Title II cases, and have held that to challenge a facially neutral government policy on the ground that it has a disparate impact on people with disabilities, the policy must have the effect of denying meaningful access to public services."). Here, Does have alleged that even though the Program applies to specialty medications that may not be used to treat conditions associated with disabilities, the Program burdens HIV/AIDS patients differently because of their unique pharmaceutical needs. Specifically, they claim that changes in medication to treat the continual mutation of the virus requires pharmacists to review all of an HIV/AIDS patient's medications for side effects and adverse drug interactions, a benefit they no longer receive under the Program. Thus, the fact that the Program may apply to plan enrollees in a facially neutral way does not necessarily defeat a § 504 claim.

Finally, the district court erred by requiring that Does plead allegations showing the Program impacts people with HIV/AIDS in a unique or severe manner. The meaningful access standard in *Choate* does not require Does to allege that their deprivation was unique to those living with HIV/AIDS, nor that the deprivation was severe—only that they were not provided meaningful access to the benefit.

Construing the allegations in the light most favorable to Does, Does stated a claim for disability discrimination under the ACA. Applying the § 504 framework, Does adequately alleged that they were denied meaningful access to their

prescription drug benefit under their employer-sponsored health plans because the Program prevents them from receiving effective treatment for HIV/AIDS.[1]  Accordingly, we vacate the district court's dismissal of Does' ACA claim and remand for further proceedings.[2]

## C

Does also challenge the district court's dismissal of their claim of disability discrimination pursuant to the ADA.  To succeed on this claim, a "plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  Does fail to plead the denial of a public accommodation because a benefit plan is not a place of "public accommodation."  *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000).  *Weyer* distinguished between the ADA's requirement of equal *access*—that a place of public accommodation like "a bookstore cannot discriminate against disabled people in granting access"—and *content*—that the same bookstore

---

[1] Does also try to fashion a failure-to-accommodate claim pursuant to Section 504 of the Rehabilitation Act and the Unruh Act by piecing together allegations from their complaint and statements from the district court's order.  Because this theory was raised for the first time on appeal, we do not address it. *See Dream Palace v. City of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004).

[2] CVS argues this court should also affirm the district court's dismissal of the ACA claim because Does did not adequately allege CVS's receipt of "federal financial assistance."  The district court should address this issue on remand in the first instance.

"need not assure that the books are available in Braille as well as print." *Id.* Thus, "an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled." *Id.* (quoting *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998)).

We affirmed *Weyer* in *Chabner v. United of Omaha Life Insurance Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000), holding that the ADA did not apply to the terms of a non-standard life insurance premium based on an increased mortality rate. *Id.* at 1045–47. We upheld the "content" versus "access" distinction, reasoning that the insurance company administering the plan was not a place of public accommodation because "the employees received their benefits through employment, and not through a public accommodation." *Id.* at 1047. The Sixth Circuit's decision in *BlueCross BlueShield* concluded the same: "Doe targets BlueCross's operation of his *health care plan*, not its control over his *pharmacy*. And Doe's health plan simply does not qualify as a public accommodation."[3] *BlueCross BlueShield*, 926 F.3d at 244.

---

[3] The Third, Fifth, and Sixth Circuits are in accord. *See Ford v. Schering-Plough Corp.*, 145 F.3d at 613 (3d Cir. 1998); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 188 (5th Cir. 2000) ("[W]e read Title III to prohibit an owner, etc., of a place of public accommodation from denying the disabled access to the good or service and from interfering with the disableds' full and equal enjoyment of the goods and services offered. But the owner, etc., need not modify or alter the goods and services that it offers in order to avoid violating Title III."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir. 1997) ("Title III does not govern the content of a long-term disability policy offered by an employer. The applicable regulations clearly set forth that Title III regulates the availability of the goods and services the place of public

The same is true here. Does are subject to the Program pursuant to the terms of their employer-provided health plans. Those plans require them to pay higher prices for specialty drugs at Network Pharmacies if Does choose to fill their prescriptions there, but those plans do not themselves deny Does access to those locations.

Because Does have not plausibly alleged that their benefit plan is a place of public accommodation, they cannot maintain a claim of discrimination under the ADA. We therefore need not address the question of whether Does were denied access to their health plan on the basis of their disability within the meaning of the ADA. We affirm the district court's dismissal of Does' ADA claim.

## D

Does next argue that the district court erred by dismissing their claim for benefits pursuant to ERISA. ERISA provides a right of action for plan participants or beneficiaries "to recover benefits due . . . under the terms of [a] plan, to enforce [ ] rights under the terms of the plan, or to clarify [ ] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To plead a violation of the statute, a plaintiff must allege "the existence of an ERISA plan," and identify "the provisions of the plan that entitle [them] to benefits." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015). The district court dismissed this claim because Does failed to identify a specific term in their health

accommodation offers as opposed to the contents of goods and services offered by the public accommodation.").

care plan that conferred the benefits they claim they were denied.

Does do not challenge this holding on appeal, or otherwise offer specific plan terms that undermine that holding. While Does continue to argue that the Program denies them the benefit under their health plan to obtain medications at any in-network community pharmacies, they have not identified any provision in their plans conferring such a benefit.

Rather, Does argue for the first time on appeal that their Plans were not "validly amended" to implement the Program, and that the Program's corresponding changes to the procedures by which Does must obtain their HIV/AIDS drugs "caused a reduction in or elimination of benefits *without a change in actual coverage*." Because Does raise this argument for the first time on appeal, it is waived, *Clemens v. CenturyLink Inc.*, 874 F.3d 1113, 1117 (9th Cir. 2017), and we affirm the district court's dismissal of this claim.

**E**

Finally, Does argue that the district court erred by dismissing their claim pursuant to the UCL. The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practices[s]." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a 'separate and distinct theory of liability.'" *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)). Does argue the district court erred by dismissing their UCL claim premised on the "unlawful" and "unfair" prongs. We address each prong in turn.

**1.**

A § 17200 action "to redress an unlawful business practice 'borrows' violations of other laws and treats [them] . . . as unlawful practices independently actionable." *Farmers Ins. Exch. v. Superior Court*, 826 P.2d 730, 734 (Cal. 1992). Does allege CVS violated the UCL by violating the ACA, ADA, Unruh Act, and 45 C.F.R. § 156.122(e). The district court concluded the UCL claim failed to the extent the predicate ACA, ADA, and Unruh Act claims failed. Because we hold that Does stated a claim under the ACA, we vacate the district court's holding on the UCL claim as to the ACA predicate.

Does also argue the court erred in dismissing the UCL claim premised on a violation of 45 C.F.R. § 156.122(e). That regulation requires health plans providing essential benefits to "allow enrollees to access prescription drug benefits at in-network retail pharmacies, unless . . . [t]he drug requires special handling, provider coordination, or patient education that cannot be provided by a retail pharmacy."

Does point to paragraphs in their complaint that describe or recite the regulation to argue they stated a claim pursuant to the UCL. However, those allegations are conclusory and do not allege facts demonstrating how CVS violated the regulation. Moreover, the district court properly concluded that "[t]he regulation does not guarantee Plaintiffs' access to out-of-network pharmacies." Does' health plans *do* allow them to access prescription drugs from in-network retail pharmacies, just not in the way that Does would like. That is not sufficient to state a UCL claim.

**2.**

The complaint did not expressly allege a UCL violation on account of an unfair business practice, but the district court construed it to so plead. The court interpreted the relevant portion of the complaint to mean that "the Program causes [Does] harm in the form of less convenient access to their prescription medication, and that Defendants' decision to enroll Plaintiffs in the Program was 'ultimately motivated by profit.'" Does dispute this interpretation, arguing that "[w]hat made the business practice at issue 'unfair' was how the Program was actually applied, resulting in conduct that violated public policy and harmed consumers." Does appear to base that allegation on three different tests courts use to evaluate unfairness under the UCL.

Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010)); (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009); or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Id*.

Applying the tethering test, Does do not mention the public policy allegedly violated, either in the complaint or the briefing, nor do they explain how, the Program violated that policy. *See McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). And, as to the balancing test, Does assert in a conclusory fashion that CVS's conduct "outweighs any justification, motive or reason therefor," but

they do not allege how that is so. As to the "immoral" test, Does challenge the district court's conclusion that profit motive is not enough to show "immoral, unethical, oppressive, unscrupulous or substantially injurious" conduct, and argue that resolution of the claim under the immoral test "requires a review of evidence from both sides and is independent of any contractual relationship between the parties," such that the court erred in dismissing the claim. But the complaint left the district court to guess what conduct Plaintiffs alleged satisfied the "unfair" prong of the UCL. Does allege no facts that would support their position, and their conclusory recitation of one of the UCL's legal standards does not clarify what conduct they claim is unfair, or on what allegations in the complaint Does rely for this claim. The claim is not adequately pled to give proper notice of Does' claim and the grounds on which it lies. *See* Fed. R. Civ. P. 8(a)(2). We therefore affirm the district court's denial of the UCL unfairness claim.

## F

Does argue in their reply brief that reversal of the district court's "erroneous holdings" should revive its claim for declaratory relief. Because Does did not mention the declaratory relief claim in their opening brief, they waived this issue. *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008).

## CONCLUSION

For the foregoing reasons, we vacate the district court's dismissal of Does' ACA claim and UCL claim to the extent

it is predicated on a violation of the ACA. We affirm the district court's dismissal of all other claims.

**AFFIRMED in part, VACATED, in part, AND REMANDED.**